John J. Hebert (#010633)
Mark W. Roth (#010708)
Wesley D. Ray (#026351)
**POLSINELLI SHUGHART PC**
CityScape Plaza
One E. Washington, Suite 1200
Phoenix, AZ 85004
Telephone: (602) 650-2000
Facsimile: (602) 264-7033
E-Mail: PhoenixBankruptcyECF@polsinelli.com
E-Mail: jhebert@polsinelli.com
E-Mail: mroth@polsinelli.com
E-Mail: wray@polsinelli.com

*Attorneys for Debtor*

**IN THE UNITED STATES BANKRUPTCY COURT**

**THE DISTRICT OF ARIZONA**

| | |
|---|---|
| In re:<br><br>WILLOW CREEK PARTNERS, LLC<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 2:11-bk-6060-RTBP<br><br>**DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT OF THE LIQUIDATING PLAN OF REORGANIZATION DATED MARCH 10, 2011** |

**I.      INTRODUCTION**

Willow Creek Partners, LLC, debtor and debtor-in-possession in the above-entitled Chapter 11 bankruptcy (the "Debtor"), hereby submits to the Court and creditors of the Debtor's estate the following Disclosure Statement in Support of the Liquidating Plan of Reorganization Dated March 10, 2011 (the "Disclosure Statement"). This Disclosure Statement is submitted by the Debtor pursuant to 11 U.S.C. § 1125

11 U.S.C. § 1125(b) prohibits the solicitation of acceptances or rejections of a plan of reorganization unless such plan is accompanied by a copy of the Disclosure Statement which has been approved by the Bankruptcy Court.

The purpose of this Disclosure Statement is to provide creditors and interested parties in this bankruptcy proceeding with such information as may reasonably be deemed sufficient to allow creditors and interested parties to make an informed decision regarding the Debtor's Liquidating Plan of Reorganization dated March 10, 2011 (the "Plan").

1

Unless otherwise noted, those portions of the Plan and this Disclosure Statement providing factual information concerning the Debtor, its assets and liabilities, have been prepared from information submitted by the Debtor and its retained professionals. The Debtor and other professionals employed by the Debtor have utilized all relevant, non privileged information provided by the Debtor in preparing this Disclosure Statement and the Plan.

This Disclosure Statement contains information that may influence your decision to accept or reject the Debtor's proposed Plan. Please read this document with care.

The financial information contained in this Disclosure Statement has not been subjected to an audit by an independent certified public accountant. For that reason, the Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy. To the extent practicable, the information has been prepared from the Debtor's financial books and records and great effort has been made to ensure that all such information is fairly represented.

This Disclosure Statement and the Plan will classify all creditors into Classes. The treatment of each Class of creditors will be set forth in this Disclosure Statement and in the Plan. You should carefully examine the treatment of the Class to which your Claim will be assigned.

This Disclosure Statement requires approval by the Bankruptcy Court after notice and a hearing pursuant to 11 U.S.C. § 1125(b). Once approved, the Disclosure Statement will be distributed with the Debtor's proposed Plan for voting. Approval of the Disclosure Statement by the Bankruptcy Court does not constitute either certification or approval of the Debtor's Plan by the Bankruptcy Court or that the Disclosure Statement is without any inaccuracy.

The Bankruptcy Court will confirm the Plan if the requirements of § 1129 of the Bankruptcy Code are satisfied. The Bankruptcy Court must determine whether the Plan has been accepted by each impaired Class entitled to vote on the Plan. Impaired Classes entitled to vote on the Plan are those Classes of claims whose legal, equitable, or contractual rights are altered, as defined under § 1124 of the Bankruptcy Code. An impaired Class of claims is deemed to have accepted the Plan if at least two thirds (2/3) in amount of those claims who vote and more than one half (1/2) in number of those claims who vote have accepted the Plan. An impaired Class of

interests is deemed to have accepted the Plan if the Plan has been accepted by at least two thirds (2/3) in amount of the allowed interests who vote on the Plan.

Even if each Class of creditors does not accept the Plan, the Plan can be confirmed under § 1129(b) of the Bankruptcy Code, so long as one impaired Class of creditors accepts the Plan. This is referred to as the "cram down" provision. The failure of each Class to accept the Plan could very well result in a conversion of this case to a Chapter 7 or dismissal of the Chapter 11, and the secured creditors repossessing their collateral and disposing of it in a commercially reasonable manner with no obligation to unsecured creditors.

Only the votes of those creditors or interested parties whose ballots are timely received will be counted in determining whether a Class has accepted the Plan.

## II. DEFINITIONS

The definitions set forth in Article I of the Plan apply in this Disclosure Statement except to the extent other definitions are set forth in this Disclosure Statement.

## III. THE DEBTOR, BACKGROUND, AND EVENTS PRECIPITATING THE CHAPTER 11

The Debtor is an Arizona limited liability company that was formed in 2003. Its members are John J. Gisi and Jason J. Gisi. The Debtor was formed for the purposes of purchasing and developing 5.5 acres of commercially-zoned real property located at the northwest corner of Willow Creek Road and Gail Gardner in Prescott, Arizona. To that end, the Debtor entered into that certain Business Loan Agreement dated July 25, 2008 with Compass Bank, pursuant to which the Debtor was advanced the principal sum of $2,340,000 (the "Loan"). The Loan matured according to its terms on July 25, 2010.

Due to disturbance in the real estate and credit markets, the Debtor was unable to realize the financial potential of its property within the timeframe originally envisioned. In recognition of this fact, the Debtor approached Compass on more than one occasion to discuss a consensual reworking of its obligations under the Loan. Unfortunately, these efforts were unsuccessful and, as of the Petition Date, the Debtor had not reached any agreement with Compass and was without means to pay the Loan in full. This impasse, among other things, prompted the Debtor's bankruptcy.

2785491.1

## IV. SIGNIFICANT EVENTS DURING THE CHAPTER 11

### A. Administrative Proceedings

The Debtor filed its Petition for Relief under Chapter 11 on March 10, 2011, and a first meeting of creditors was scheduled shortly thereafter.

### B. Retention of Professionals

On March 10, 2011, the Debtor's bankruptcy counsel, Polsinelli & Shughart PC ("PS"), filed its petition to be retained as bankruptcy counsel for the Debtor. A proposed order approving PS as bankruptcy counsel for the Debtor was lodged and is currently pending before the Court.

### C. Plan and Disclosure Statement

The Debtor filed the Plan and Disclosure Statement concurrently with its voluntary petition, and intends to move dutifully and expeditiously towards confirmation.

## V. DESCRIPTION OF ASSETS AND LIABILITIES OF THE DEBTOR

The values ascribed to the assets below are based on the Debtor's best estimate and other factors such as the purchase price, comparable sales, and tax assessments.

### A. Assets

1. **Real Property** – The Debtor owns approximately 5.5 acres of real property located at the northwest corner of Willow Creek Road and Gail Gardner in Prescott, Arizona, and referred to generally as 905 Flora Street, Prescott, Arizona 86301 (the "Property). According to an appraisal commissioned by BBVA Compass ("Compass") and conducted by KS Appraisal, a copy of which is attached hereto as Exhibit "A," as of April 21, 2010, the Property's value was $2,400,000. The Debtor believes that this value remains accurate.

2. **Bank Accounts** – As of the Petition Date, the Debtor had the following bank accounts with the following balances:

    a. Country Bank Checking Account # 2103011 - $113.21;

    b. National Bank of Arizona Checking Account # 2511641082 - $0;

    c. Money Market Account - $0

2785491.1

3. **Equipment and other Property** – Other than certain office equipment, subject to a lien in favor of Mr. and Mrs. Marc Van Wormer, the Debtor does not own any significant equipment or personal property.

B. **Liabilities**

1. **Priority**

a. The Debtor is not aware of the existence of any pre-petition priority claims.

2. **Secured**

a. The Debtor's schedules list Compass as a creditor with a claim in the approximate amount of $2,340,000 secured by a first position lien on the Property.

b. The Debtor's schedules list Donald R. Leo & Company, LTD. ("Leo LTD") as a creditor with a claim in the approximate amount of $5,000 secured by a retainer for professional services.

c. The Debtor's schedules list Mr. and Mrs. Marc Van Wormer (the "Van Wormers") as creditors with a claim in the approximate amount of $5,000 secured by a first position lien on certain office equipment owned by the Debtor (the "Equipment").

d. The Debtor's schedules list the Yavapai County Treasurer as a creditor with a claim in the approximate amount of $17,493 derived from accrued but unpaid property taxes relating to the Property.

3. **Unsecured**

a. The Debtor's schedules do not list any unsecured creditors. As such, the only unsecured claims that might exist in this reorganization are presently unknown or will result from the bifurcation of a secured creditor's claim pursuant to 11 U.S.C. § 506.

C. **Financial Reports**

The Debtor intends to remain current in the filing of its monthly operating reports and copies can be obtained from the Court's electronic docket.

2785491.1

**D. Administrative Expenses**

The Debtor anticipates its administrative expenses will consist primarily of attorneys' fees for PS. PS is currently in possession of a pre-petition retainer in the amount of $75,000 and the Debtor anticipates that the attorneys' fees will likely be no more than that amount. Any amount by which the fees and costs incurred by PS exceed this amount will represent an administrative claim against the Debtor's estate.

## VI. PLAN SUMMARY

The following statements concerning the Plan are merely a summary of the Plan and are not complete. The statements are qualified entirely by express reference to the Plan. Creditors are urged to consult with counsel or each other in order to understand the Plan fully. The Plan is complete, inasmuch as it proposes a legally binding agreement by the Debtor, and an intelligent judgment cannot be made without reading it in full.

## VII. TREATMENT OF CLASSES

**A. Priority Claims: Class 1**

**1. Administrative Claims: 1-A**

Unless they agree to an alternative form of treatment, the Allowed Claims of Class 1-A shall be paid in full, in cash, on or before the Effective Date or as the same are Allowed and ordered paid by the Court. Any Class 1-A Claim not allowed as of the Effective Date shall be paid within 5 days of its being allowed by the Court.

This Class is not impaired.

**2. Tax Claims: 1-B**

This class consists of Allowed Priority Claims under 11 U.S.C. § 507(a)(8) which are not otherwise treated as Secured Claims herein. The Allowed Priority Claims of Class 1-B shall be paid in full, in cash, on or before the Effective Date, or as the same are Allowed and ordered paid by the Court. Any Class 1-B Claim not allowed as of the Effective Date shall be paid within 5 days of its being allowed by the Court.

This class is not impaired.

2785491.1

B.     **Secured Claims: : Class 2**

   1.     **Allowed Secured Claim of BBVA Compass: 2-A**

This class consists of the Allowed Secured Claim of BBVA Compass ("Compass"), which the Debtor believes to be in the approximate amount of $2,340,000. This Claim derives from the Loan and is allegedly secured by a first-position lien on the Property. In conjunction with the hearing to be held on confirmation of the Plan, the Court will determine the value of the Property as of the Effective Date. On the Effective Date, in full satisfaction of Compass' Allowed Secured Claim, the Property will be conveyed to Compass by execution of a Special Warranty Deed substantially similar in form to Exhibit "B" hereto. Any amount by which the Allowed Claim of Compass exceeds the value of the Property, as determined by the Court, will result in an Unsecured Claim that will be treated as part of Class 3 below.

This is an impaired class.

   2.     **Allowed Secured Claim of Donald R. Leo & Company, LTD: 2-B**

This Class consists of the Allowed Secured Claim of Donald R. Leo & Company, LTD ("Leo LTD") in the approximate amount of $5,000 for professional services rendered. This Claim is secured by a retainer presently held by Leo LTD in the amount of $5,000 (the "Retainer"). Commencing on the Effective Date, the Allowed Secured Claim of Leo LTD will be paid, through offset against the Retainer, in 5 equal monthly installments. Leo LTD will not receive any interest on its Allowed Claim. Leo LTD will retain its lien in and to the Retainer until its Allowed Secured Claim has been satisfied in full.

   3.     **Allowed Secured Claim of Mr. and Mrs. Marc Van Wormer: 2-C**

This class consists of the Allowed Secured Claim of Mr. and Mrs. Marc Van Wormer ( the "Van Wormers") in the approximate amount of $5,000 relating to the financing of certain office equipment purchased by the Debtor (the "Equipment"). This Claim is secured by a first position lien on the Equipment. On the Effective Date, the Allowed Claim of the Van Wormers will be satisfied in full by payment of $3,500 from the Equity Contribution. The Equipment will be retained by the Interest Holders for use in fulfilling their obligations as Disbursing Agent under the Plan.

2785491.1

This is an impaired class.

### 4. Allowed Secured Claim of Yavapai County: 2-D

This class consists of the Allowed Secured Claim of Yavapai County, Arizona (the "County"), in the approximate amount of $17,493, derived from property taxes relating to the Property which were accrued, but unpaid, as of the Petition Date. The Allowed Secured Claim of the County will be paid in full from the Equity Contribution, with interest accruing at 2% over the applicable statutory rate, on the Effective Date. Upon such payment, any lien on the Property in favor of the County will be deemed to be satisfied and released in full.

This is an impaired class.

### C. Unsecured Claims: Class 3

The Allowed Unsecured Claims in this Class will share, *pro rata*, in a distribution of the sum of $50,000, paid from the Equity Contribution, on the 60th day following the Effective Date. Upon payment to the holder thereof of a *pro rata* portion of this $50,000 distribution, each Allowed Unsecured Claim in this Class shall be deemed satisfied in full.

This is an impaired class.

### D. Interests: Class 4

The holders of Allowed Interests in the Debtor will receive nothing on account of those Interests, and the Interests will be extinguished in accordance with otherwise applicable law upon completion of the payments called for under the Plan. Five days prior to the Effective Date, the holders of Allowed Interests in the Debtor will deliver the Equity Contribution to the Reorganized Debtor.

## VIII. RETAINED CAUSES OF ACTION

The Debtor specifically retains all causes of action. Retained causes of action include, but are not limited to, all avoidance actions, fraudulent conveyance actions, preference actions, and other claims and causes of action of every kind and nature whatsoever, arising before the Effective Date which have not been resolved or disposed of prior to the Effective Date, whether or not such claims or causes of action are specifically identified in the Disclosure Statement. To the extent that a preference or fraudulent conveyance occurred before the bankruptcy filings, such transfer may be

recoverable by the bankruptcy estate for the benefit of the estate under Sections 544, 547, or 548 of the Bankruptcy Code.

To date, no complaints have been filed under any of these theories. To the extent any such claims exist, they are specifically preserved for the benefit of the bankruptcy estate. Any recovery obtained from retained causes of action shall become an additional asset of the Debtor, unless otherwise ordered by the Court, and shall be available for distribution in accordance with the terms of the Plan.

## IX. MANAGEMENT

Because the assets of the Debtor are being liquidated under the Plan, it will have no post-confirmation operations, and as such, no evaluation of the future management of the Debtor is necessary.

## X. DISBURSING AGENT

The Interest Holders shall act, collectively, as the Disbursing Agent and shall issue the payments and take whatever other actions are required under the Plan.

## XI. DOCUMENTATION OF PLAN IMPLEMENTATION

In the event any entity which possesses an Allowed Secured Claim or any other lien in any of the Debtor's property for which the Plan requires the execution of any documents to incorporate the terms of the Plan fails to provide a release of its lien or execute the necessary documents to satisfy the requirements of the Plan, the Debtor may record a copy of this Plan or the Confirmation Order with the appropriate governmental agency and such recordation shall constitute the lien release and creation of any necessary new liens to satisfy the terms of the Plan. If the Debtor deems advisable, it may obtain a further Order from the Court that may be recorded in order to implement the terms of the Plan.

## XII. LIQUIDATION ANALYSIS

As the Debtor's Plan is a liquidating plan, with the additional infusion of more than $50,000 from the Interest Holders that would not otherwise be available, it is impossible that any creditor will receive less under the Plan than it would if the Debtor's assets were liquidated. As such, the

2785491.1

requirements of the 11 U.S.C. § 1129(a)(7) are, by virtue of the Plan's nature, satisfied, and a detailed discussion of the liquidation value of the Debtor's assets is not warranted.

## XIII. EFFECT OF CONFIRMATION

Except as otherwise set forth herein, as of the Confirmation Date, any party that has held, currently holds, or may hold a Claim or other debt or liability or an Equity Interest, is permanently enjoined from taking any of the following actions on account of such Claims, debts, liabilities, or Equity Interests; (a) commencing or continuing in any manner any action or other proceeding against any property to be distributed under this Plan; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order against any property to be distributed under this Plan; (c) creating, perfecting, or enforcing any lien or encumbrance against any property to be distributed under this Plan; and (d) commencing or continuing any action, in any manner, in any place, that does not comply with or is inconsistent with the provisions of this Plan or the Bankruptcy Code. The Debtors will not receive a discharge under Section 1141(d)(3) of the Code.

All claims arising from, or related to, any act or omission of the Debtor, or its current and former officers, directors, employees, agents, brokers, advisors, shareholders, representatives, and professionals and their affiliates, heirs, assigns and successors, after the petition date must be brought in, and adjudicated by, the United States Bankruptcy Court for the District of Arizona. Any action brought in any forum that is not in accordance with this paragraph shall be enjoined, subject to jurisdictional limitations.

## XIV. IMPLEMENTATION AND FUNDING OF DEBTOR'S PLAN

The Debtor's Plan will be funded, primarily, through the Equity Contribution made by the Interest Holders. This contribution will be used to satisfy, in full, the claims of the Van Wormers, Yavapai County, and general Unsecured Creditors included in Class 3. Because the Debtor's Plan is a liquidating Plan, there are no significant obligations to be addressed in preparing for its implementation.

10

2785491.1

## XV. TAX CONSEQUENCES

Pursuant to § 1125(a)(1) of the Bankruptcy Code, the Debtor is to provide a discussion of the potential material federal tax consequences of the Plan to the Debtor, any successor to the Debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the Plan.  Adequate information need not include such information about any other possible or proposed plan, and in determining whether the Disclosure Statement provides adequate information, the Court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

Neither the Debtor nor its lawyers can make any statements with regard to the tax consequences of the Plan on any of the creditors.  Although they would note that to the extent the creditor is not paid in full their Allowed Claim, they should consult with their tax advisor concerning the possibility of writing off for tax purposes that portion of their Allowed Claim that is not paid.  Each creditor in this case, when analyzing the Plan, should consult with its own professional advisors to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences to the creditor.

The Bankruptcy Tax Act generally provides that the Debtor does not have to recognize income from the discharge of indebtedness.  The Plan contemplates significant discharge of indebtedness; however, because the Debtor is in bankruptcy, it will not have to recognize the discharge of indebtedness as income for tax purposes.

## XVI. NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no Allowed Claim, whether Secured, Unsecured, Administrative, or Priority, shall include, any fine, penalty, exemplary or punitive damages, late charges, default interest, or other monetary charges relating to or arising from any default or breach by the Debtor, and any Claim on account thereof shall be deemed disallowed, whether or not an objection is filed.

2785491.1

## XVII. EXECUTORY CONTRACTS

The Debtor does not believe that it is party to any executory contracts or unexpired leases, but in the event any are discovered, they are hereby rejected. Claims under § 502(g) of the Code arising as a result of the rejection of executory contracts or unexpired leases shall be filed no later than 30 days after the Confirmation Date. Any such Claims not timely filed and served shall be disallowed.

## XVIII. VOTING PROCEDURE

The Plan divides the claims of Creditors and the Interests of Interest-Holders into separate Classes. All Classes of claimants are encouraged to vote; however, only the vote of holders of Claims or Interests that are impaired by the Plan will have a significant impact upon the confirmation process. Generally, this includes Creditors who, under the Plan, will receive less than full payment of their Claims on the Effective Date of the Plan.

All creditors entitled to vote on the Plan must cast their vote by completing, dating, and signing the ballot which has been mailed to them with this Disclosure Statement. The ballot contains instructions concerning the deadline for submitting the ballot and the address to which the ballot should be mailed.

## XIX. MODIFICATION OF PLAN

In addition to its modification rights under § 1127 of the Bankruptcy Code, the Debtor may amend or modify its Plan at any time prior to Confirmation without leave of the Court. The Debtor or the Reorganized Debtor may propose amendments and/or modifications of its Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtor or the Reorganized Debtor may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of their Plan.

## XX. CLOSING OF THE CASE

If the Court does not close this case on its own motion, the Reorganized Debtor will move the Court to close this case once the Plan is deemed substantially consummated. Until substantial

2785491.1

consummation, the Reorganized Debtor will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. § 1930, as amended. Pursuant to 11 U.S.C. § 1129(a)(12), all fees payable under Section 1930 of Title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## XXI. RETENTION OF JURISDICTION

The Court will retain jurisdiction until the Plan has been fully consummated for, including but not limited to, the following purposes:

    A.    The classification of the Claims of any Creditors and the re-examination of any Claims which have been allowed for the purposes of voting, and for the determination of such objections as may be filed to the Creditor's Claims. The failure by the Debtor to object to or examine any Claim for the purpose of voting shall not be deemed to be a waiver of the Debtor's rights to object to or to re-examine the Claim in whole or in part.

    B.    To determine any Claims which are disputed by the Debtor, whether such objections are filed before or after Confirmation, to estimate any Unliquidated or Contingent Claims pursuant to 11 U.S.C. § 502(c)(1) upon request of the Debtor or any holder of a Contingent or Unliquidated Claim, and to make determinations on any objection to such a Claim.

    C.    To determine all questions and disputes regarding title to the assets of the estate, and determination of all causes of action, controversies, disputes, or conflicts, whether or not subject to action pending as of the date of Confirmation, between the Debtor and any other party, including but not limited to, any rights of the Debtor to recover assets pursuant to the provisions of the Bankruptcy Code.

    D.    The correction of any defect, the curing of any omission or any reconciliation of any inconsistencies in the Plan, or the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan.

    E.    The modification of the Plan after Confirmation, pursuant to the Bankruptcy Rules and the Bankruptcy Code.

2785491.1

        F.        To enforce and interpret the terms and conditions of the Plan.

        G.        To enter orders, including injunctions, necessary to enforce the title, rights, and powers of the Debtor, and to impose such limitations, restrictions, terms, and conditions of such title, right, and power as this Court may deem necessary.

        H.        To enter an order concluding and terminating this case.

## XXII. DISCLAIMER

Court approval of this Disclosure Statement and the accompanying Plan of Reorganization, including the exhibits attached hereto, is not a certification of the accuracy of the contents thereof. Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the Plan should be approved or disapproved.

## XXIII. PROPONENT'S RECOMMENDATION/ALTERNATIVES TO THE PLAN

The Debtor recommends that all creditors entitled to vote for the Plan do so. The Debtor's Plan will pay Compass and Yavapai County the full amount of their Allowed Secured Claims, pay $3,500 to the Van Wormers, and provide an additional $50,000 to the holders of general Unsecured Claims. The alternatives to confirmation of the Plan would be either conversion of this case to a case under Chapter 7 of the Bankruptcy Code or its dismissal.

A conversion of the Debtor's bankruptcy will result in the appointment of a Chapter 7 trustee and, most likely, the hiring of an attorney by the trustee. Expenses incurred in administering the Chapter 7 case would take priority in the right to payment over allowed, administrative expenses incurred in the Chapter 11 case. Both Chapter 7 and Chapter 11 administrative expenses take priority over the payment of unsecured claims without priority. More importantly, the Debtor's Interest Holders would not be required to make the Equity Contribution called for in the Plan. In other words, conversion would likely decrease the net amount available to pay currently existing creditors.

Dismissal of the Debtor's case would likely result in a foreclosure upon the Property by Compass and the dissolution of the Debtor as a corporate entity. Furthermore, if the Debtor's case were dismissed, the Interest Holders would not be required to make the Equity Contribution called for in the Plan. A dismissal would result then, in a smaller pool of assets available for distribution

2785491.1

to unsecured creditors. For all these reasons, the Debtor urges you to vote to accept the Plan and to return your ballots in time to be counted.

DATED: March 10, 2011.

POLSINELLI SHUGHART PC

By: /s/ Wesley Ray
Mark W. Roth
Wesley D. Ray
One E. Washington., Suite 1200
Phoenix, AZ 85004

*Attorneys for Debtor*

WILLOW CREEK PARTNERS, LLC

By:  GISI ENTERPRISES, INC.
Its: Manager

By: /s/ Jason J. Gisi
Jason J. Gisi, President

2785491.1